# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, CONTINENTAL CASUALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, RSUI INDEMNITY COMPANY, and BERKLEY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N16C-01-104 EMD CCLD |
| DAVID H. MURDOCK, DOLE FOOD COMPANY, INC., and DFC HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: January 22, 2019
Decided: May 1, 2019

## ORDER GRANTING SUMMARY JUDGMENT ON COUNTERCLAIM 3—BREACH OF IMPLIED COVENENT OF GOOD FAITH AND FAIR DEALING

Upon consideration of the Plaintiffs' Second Motion for Summary Judgment (the "Insurers' Motion"); Defendants' Answering Brief in Opposition to Plaintiff Insurers' Second Motion for Summary Judgment (the "Response"); Plaintiff Insurers' Reply Brief in Support of Second Motion for Summary Judgment (the "Reply"); the December 7, 2018 and January 22, 2019 hearings (the "Hearings") held on the Insurers Motion, the Response and the Reply,

# BACKGROUND

## THE SHAREHOLDER LITIGATIONS

Shareholders of Dole Food Company, Inc. ("Dole") sued several defendants including David Murdock, who owned 40% of Dole stock and was its CEO, at the time of a merger with DFC Holdings, LLC ("DFC" and collectively with Dole and Mr. Murdock, the "Defendants").[1]

In 2013, Mr. Murdock utilized DFC to acquire the remaining Dole stock and take it private.[2] Mr. Murdock completed the acquisition in November 2013. Mr. Murdock paid shareholders $13.50 per share.[3] Thereafter, the shareholders filed multiple lawsuits challenging the transaction's fairness.[4]

In one of the shareholder cases, *In re Dole Food Company, Inc. Stockholder Litigation* ("Memorandum Opinion"), the stockholders alleged Mr. Murdock, Mr. Carter and DFC engaged in a process that manipulated the stock price so that Mr. Murdock could acquire the stock at a lower price.[5] Vice Chancellor Laster, in his Memorandum Opinion, repeatedly cited to "fraud" and "fraudulent activity."[6] Vice Chancellor Laster found breaches of the duty of loyalty, and assessed liability against Mr. Murdock, Mr. Carter, and DFC in the amount of $148,190,590.18.[7]

On September 21, 2015, Dole's "insurance recovery counsel" wrote to the Insurers.[8] The letter attached the Memorandum Opinion and notified the Insurers that Dole was considering settlement and mediation.[9] It asked that the Insurers fund a settlement.[10] The Insurers all

---

[1] Michael Carter is also a party in the Court of Chancery case but is no longer a defendant in this civil action.
[2] Compl. at ¶ 17.
[3] *Id.* at ¶ 18.
[4] *Id.*
[5] *See* 2015 WL 5052214, at *3-25 (Del. Ch. Aug. 27, 2015); Compl. ¶ 20.
[6] *Dole*, 2015 WL 5052214 at *2, 26.
[7] *Id.* at *47.
[8] Compl. at ¶ 45.
[9] *Id.* at ¶ 46.
[10] *Id.*

responded, citing various potential exclusions and requesting more information from Dole.[11] On October 29, 2015, Dole, Mr. Murdock and Mr. Carter responded.[12] Dole disagreed with one of the Insurers' reservations, and again demanded coverage for the underlying settlement.[13]

On November 5, 2015, Dole signed a term sheet settling the underlying action.[14] On December 7, 2015, the underlying parties signed a formal Stipulation and Agreement of Settlement (the "Settlement").[15] In lieu of an appeal, the parties settled for 100% plus interest.[16] Mr. Murdock agreed to pay the settlement on the Defendants' behalf. Vice Chancellor Laster approved the settlement on February 10, 2016 (the "Order and Final Judgment").[17] The Settlement caused the Chancery Court action to be dismissed with prejudice.[18]

The Defendants contend that they kept the Insurers informed as to the progress of the negotiations and provided copies of drafts of term sheets.[19] The Defendants also state that none of the Insurers asked to participate in the settlement negotiations or objected to or commented on any of the settlement terms.[20] On February 26, 2016, Dole's counsel wrote to the Insurers, seeking indemnification for the Settlement.[21] The Insurers did not object to the Settlement or appeal the Order and Final Judgment in the Chancery Court.[22] On January 13, 2016, prior to the Chancery Court's approving the Settlement, the Insurers filed this civil action.

---

[11] *See id.* Ex. 12 (Letter from Federal Insurance Company); Ex. 13 (Letter from Arch Insurance Company); Ex. 14 (Letter from Liberty International Underwriters); Ex. 15 (Letter from Continental Insurance Company); Ex. 16 (Letter from Navigators Insurance Company); Ex. 17 (Letter from RSUI Indemnity Company); Ex. 18 (Letter from Berkley Insurance Company).
[12] *Id.* Ex. 19.
[13] *See id.*
[14] Compl. ¶ 51.
[15] *Id.* at ¶ 57.
[16] Mot. at 31.
[17] Compl., Ex. 3 at 13.
[18] *Id.* at ¶ 6.
[19] Affidavit of Pamela M. Woods ("Woods Aff."), ¶¶ 6-8.
[20] *Id.*, ¶¶ 14-18.
[21] Pls.' Compl. ¶ 59.
[22] Woods Aff., ¶¶ 18, 20.

On December 9, 2015, suit was filed against Dole and Mr. Murdock in United States District Court for the District of Delaware—*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.,* No. 1:15-CV-01140 (D. Del.)(the "San Antonio Action").[23] The Defendants state that Dole gave the Insurers notice of the San Antonio Action.[24] The Insurers responded over a six-month period as to their respective coverage positions.[25] According to the Defendants, the Insurers took the same coverage positions with respect to the San Antonio Action as were taken in the Memorandum Opinion.[26]

In October 2016, the Delaware District Court scheduled an Alternative Dispute Resolution teleconference in the San Antonio Action.[27] The Defendants notified the Insurers of this teleconference.[28] The San Antonio Action plaintiffs then approached the Defendants about mediation, and the parties discussed the timing of such a mediation and potential mediators.[29]

The Defendants scheduled a teleconference to discuss the potential mediation with the Insurers.[30] During this teleconference, the Defendants stated to the Insurers that the Defendants thought it would be beneficial to mediate the San Antonio Action.[31] The Defendants purported to identify potential mediators that had been previously discussed with the plaintiffs and asked the Insurers for input.[32] The Insurers provided some feedback on potential mediators but none objected to the mediation or to using Judge Layn Phillips as a mediator.[33]

---

[23] Woods Aff., ¶ 23.
[24] *Id.,* ¶ 24.
[25] *Id.,* ¶¶ 24, 26-28, 31, 37.
[26] *Id.*
[27] Affidavit of Alexander K. Mircheff ("Mircheff Aff."), ¶3.
[28] *Id.*
[29] *Id.,* ¶ 4.
[30] *Id.,* ¶¶ 5-6.
[31] *Id.*
[32] *Id.*
[33] *Id.*

Arch and Liberty asked the Defendants to provide who was the Defendants' damages expert and a damage assessment report during the teleconference.[34] The Defendants refused to provide this information, claiming that it was work product or attorney-client privileged information and if it was disclosed to non-defending insurers it could be argued that the Defendants waived these privileges.[35]

The Defendants relayed to the Insurers the mediation dates.[36] Once each Insurer signed a Mediation Confidentiality Agreement required by the mediator, the Defendants provided the mediation briefs to the Insurers.[37] According to the Defendants, only Arch and Liberty attended the mediation and the other Insurers received telephonic updates.[38]

After the mediation, the Defendants told the Insurers that the Defendants had provisionally agreed to terms of a term sheet (the "Term Sheet").[39] The Term Sheet was subject to the approval of Dole's board of directors within ten business days.[40] The Defendants asked the Insurers to confirm that the Insurers would contribute to the settlement reached in the Term Sheet.[41] The Defendants also provided the Insurers with information requested in the November 2016 teleconference—damage analyses by Dole's consulting expert—and asked them to let the Defendants know if they needed any additional information.[42] According to the Defendants, none of the Insurers requested additional information.[43]

---

[34] Woods Aff., ¶ 30.
[35] *Id.*
[36] *Id.,* ¶ 32-35.
[37] *Id.*
[38] *Id.,* ¶ 38.
[39] *Id.,* ¶ 39.
[40] *Id.*
[41] *Id.*
[42] *Id.,* ¶ 41.
[43] *Id.,* ¶ 42.

The Insurers each responded to the request that it contribute to fund the settlement.[44] The Insurers did not fund the settlement.[45] The Defendants negotiated a final settlement (the "San Antonio Settlement") with the San Antonio Action plaintiffs.[46] The Delaware District Court entered a Judgment Approving Class Action Settlement, finding that the settlement was "in all respects, fair, reasonable, and adequate to the Settlement Class."[47]

The Insurers did not provide prior written consent for (i) the Settlement or (ii) the San Antonio Action Settlement.

### THE INSURANCE POLICIES

Dole had insurance policies (the "Insurance Policies") with Arch Insurance Company; Liberty Mutual Insurance Company; Continental Casualty Insurance Company; Navigators Insurance Company; RSUI Indemnity Company; and Berkeley Insurance Company (collectively, "Insurers"). The Insurers provided Doles' overall package of Directors and Officers Liability insurance coverage.[48] All policies are in excess of, and follow form to, Axis Insurance Company's Primary Policy and two, non-party, excess carriers: National Union Fire Insurance Company and Federal Insurance Company.[49] Dole is a Delaware corporation.[50] DFC is a Delaware LLC.[51]

The Insurance Policies are claims-based insurance for the directors, officers, and corporate liability. This Order will only address those portions of the Insurance Policies relevant to this decision on the Bad Faith Counterclaim.

---

[44] *Id.*, ¶ 44.
[45] *Id.*
[46] Mircheff Aff., ¶ 10.
[47] *Id.*, Ex. G.
[48] Plaintiffs' Amended Complaint for Declaratory Relief ("Compl.") ¶ 21.
[49] *Id.*
[50] *Id.* at ¶ 16.
[51] *Id.* at ¶ 17.

The Insurance Policies contained a provision requiring that the Insured received the Insurers' written consent before action is taken (the "Written Consent Provision"). The Written Consent Provision states: "The Insureds shall not admit any liability, settle, offer to settle, stipulate to any judgment or otherwise assume any contractual obligation with regard to any Claim or Insured Inquiry without the Insurer's prior written consent, which shall not be unreasonably withheld."[52]

The Insurance Policy also contained a provision that required the Insureds to cooperate with the Insurers (the "Cooperation Clause"). The Cooperation Clause states:

> The Insurer shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in party hereunder. . . . The Insureds shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to Loss paid; provided the failure of one Insured Individual to comply with this provision shall not impair the rights of any other Insured Individual under this Policy.[53]

In the Endorsement No. 3 to the Primary Policy, Exclusion IV.A.6 was replaced—Section V.6. As replaced, Exclusion IV.A.6 (the "Fraud Exclusion") reads as follows:

> The Insurer shall not be liable for Loss on account of any Claim: ... based upon, arising out of or attributable to:
>
> a. Any profit, remuneration or financial advantage to which the Insured was not legally entitled; or
> b. Any willful violation of any statute or regulation or any deliberately criminal or fraudulent act, error or omission by the Insured;
>
> if established by a final and non-appealable adjudication adverse to such Insured in the underlying action.

---

[52] Motion, Ex. 1 (the old provision stated: Insureds shall not settle any Claim, select any defense counsel, incur any Defense Costs, admit or assume any liability, stipulate to any judgment without the Insurer's prior written consent, which shall not be unreasonably withheld, or otherwise assume any contractual obligation. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation, admission or stipulated judgment to which it has not consented or for which the Insureds are not legally obligated").
[53] *Id.*

**PROCEDURAL BACKGROUND**

On January 13, 2016, prior to the Chancery Court's approving the Settlement, the Insurers filed this Declaratory Judgment action. The parties stipulated to dismiss the Insurers' claims against DFC, because DFC, is not an insured under any of the policies.[54] The Insurers filed an Amended Complaint for Declaratory Judgment (the "Amended Complaint") on April 8, 2016.

The Amended Complaint alleges facts regarding the stockholders' settlement.[55] In the Amended Complaint, the Insurers seek a declaratory judgment that the Insureds "cannot use proceeds to pay for the fruits of their own fraud."[56] The Amended Complaint seeks: (i) declaratory judgment concerning coverage for the *Stockholder Action*; and (ii) declaratory judgment concerning rights to subrogation.[57]

The Defendants filed their amended answer, affirmative defenses, and counterclaims (the "Counterclaims") on April 18, 2017. The Defendants assert five counterclaims. In Counterclaim 1, the Defendants argue that the Insurers breached the Policies by refusing to pay for the Settlement. In Counterclaim 2, the Defendants contend that the Insurers breached the Policies by refusing to pay for the San Antonio Settlement. In Counterclaim 3, the Defendants claim that the Insurers breached the implied covenant of good faith and fair dealing in denying coverage for the Settlement and the San Antonio Settlement (the "Bad Faith Counterclaim"). Specifically, the Defendants allege that the Insurers acted in bad faith by, among other things, artificially and narrowly interpreting the Policies, asserting grounds to avoid coverage that the Insurers know are

---

[54] *Arch Ins. Co. v. Murdock*, 2016 WL 7414218, at *2 (Del. Super. Dec. 21, 2016).
[55] *Id.*
[56] Compl. ¶ 1.
[57] *Id.* ¶¶ 66-74. On April 28, 2016, the Insureds filed a Motion to Dismiss. On December 21, 2016, the Court granted in part and denied in part the Motion to Dismiss. The Court found that: (1) there is an actual controversy between the Insurers and the Insureds for coverage of the Stockholder Action; but (2) under Delaware or California choice of law, the Insurers cannot subrogate against the Insured. *See Murdock*, 2016 WL 7414218, at *4-8.

contrary to law and policy, and failing to inquire into bases that that would support the Defendants' claims for indemnification. In Counterclaim 4, the Defendants allege that the Insurers committed fraud because the Insurers never had any intention of fulfilling its obligations under the Policies. So, the Defendants assert that the Defendants are entitled to recover punitive damages. Finally, Counterclaim 5 is for a claim for fraud in the inducement.

All of the insurance carriers answered the Counterclaims. The insurance carriers assert many of the reasons for disclaiming coverage in the Amended Complaint as affirmative defenses in the insurance carriers' answers to the Counterclaims.[58]

## LEGAL STANDARD

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[59] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[60] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the

---

[58] On March 1, 2018, the Court partially granted insurance carriers Arch Insurance Company's, Liberty Mutual Insurance Company's, Continental Casualty Insurance Company's, Navigators', RSUI's, and Berkley Insurance Company's motion for summary judgment (the "First MSJ"), dismissing Counterclaim 5 with prejudice. *Arch Ins. Co. v. Murdock*, 2018 WL 1129110 (Del. Super. Mar. 1, 2018). The Court also held that it could not grant summary judgment on (i) the Defendants' violation of the Written Consent Provision because the Insurers had not shown that the Insurers suffered sufficient prejudice, (ii) the Defendants' violation of the Cooperation Clause because there were genuine issues of material facts about whether there was a substantial breach of the Cooperation Clause, and (iii) the Bad Faith Counterclaim because the parties had not fully developed the record and genuine issues of material fact remained. *Id*. at *16. The Court found that the Defendants did not obtain prior written consent from the Insurers to the Settlement or the San Antonio Action Settlement. The Court did not grant summary judgment on the issue of consent because the Insurers failed to show prejudice and whether prior written consent was unreasonably withheld. *Id*. at *13.
[59] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[60] *Id.*

law to the factual record, then summary judgment will not be granted.[61] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[62] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[63]

## DISCUSSION

Through the Insurers' Motion, the Insurers seek summary judgment, in part, as to the Bad Faith Counterclaim. Upon review of the record in this civil action and the arguments at the Hearings, the Court holds that no genuine issues as to material facts are in dispute and that the Insurers are entitled to judgment as a matter of law on the Bad Faith Counterclaim.

Under Delaware law, the claimant bears the burden of proof for a bad faith claim.[64] The claimant must show that the insurer lacked "reasonable justification" to deny the coverage to the insured.[65] The relevant question is "whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." [66] "Where the issue to be tried is one of disputed fact, the question of bad faith refusal to pay should not be submitted to the jury unless it appears that the insurer did not have reasonable grounds for relying upon its defense to liability."[67]

---

[61] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[62] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[63] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[64] *Bennett v. USAA Cas. Ins. Co.*, 158 A.3d 877, ¶ 13 (Del. 2017).
[65] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016).
[66] *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 369 (Del. Super. Ct. 1982).
[67] *Id.*

Here, the Insurers' advanced a number of well-reasoned arguments for denying the coverage to Insureds—e.g., the Fraud Exclusion and failure to comply with the Written Consent Provision and/or the Cooperation Clause. This litigation will eventually resolve whether the Insurance Policies will provide indemnification for the Settlement and the San Antonio Settlement. Upon the facts presented in this civil action, the Court finds that the Insureds were not denying coverage or seeking a declaratory judgment as to coverage in bad faith.

The Defendants contend that the Insurers acted in bad faith because the Insurers applied California law as a default without conducting a more thorough choice of law analysis. The Defendants support their arguments with deposition excerpts from various agents of the Insurers regarding their due diligence regarding the Fraud Exclusion.

But, applying California law as a default, while incorrect, was reasonable. The Insurers issued the Insurance Policies to Dole which was headquartered in California, and the Insurance Policies were negotiated by California brokers on the insured's behalf, and included California amendatory endorsements. The determination of what law applies to the Insurance Policies is a very sophisticated analysis. Prior to the Court's decision in this civil action, the Court is aware of only one other written decision by a court on the issue of which law applies to directors & officer's liability insurance policies. In addition, while it may have ended up being wrong, the Insurers' determination that the Memorandum Opinion constituted a "final and non-appealable adjudication" adverse to the Defendants was rational when made.

The Court also feels that the parties focus too much on the Fraud Exclusion as it relates to the Bad Faith Counterclaim. In addition to the Fraud Exclusion, the Insurers asserted other viable reasons for denying coverage—the failure of the Insureds to comply with (i) the Written Consent Provision; and (ii) the Cooperation Clause. Moreover, the Insurers quickly moved to

11

have a determination as to indemnification by filing this civil action. In the process, the Court has held, with respect to the First MSJ, that there are disputes as to material facts regarding the Written Consent Provision and the Cooperation Clause—including, for example, the finding that the Defendants did not obtain written consent before entering into the Settlement and the San Antonio Settlement but that there was a question of fact as to whether that consent was unreasonably withheld. [68]

Here, the Court has entered a number of decisions (and some forthcoming decisions) that the issue of coverage to be tried is one of disputed fact. Under Delaware law and the record of this civil action, the Court should not submit the question of bad faith refusal to pay to the jury because the Insurers had reasonable grounds for relying upon its defense to liability. As such, the Court will enter summary judgement in favor of the Insurers on the Bad Faith Counterclaim.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS**, in part, the Insurer Motion as to the Bad Faith Counterclaim.

*/s/ Eric M. Davis*
Eric M. Davis, Judge

---

[68] *Murdock*, 2018 WL 1129110 at *13.